## THE MORRIS CANAL AND BANKING COMPANY ads. JAMES MITCHELL.

1, A writ of *certiorari* to remove a verdict and proceedings in a justice's court, under the act of March 4th, 1847, allowed and issued before the trial, is not for that reason void.

Morris Canal and Banking Company v. Mitchell.

2. The act of March 17th, 1855, *Nix. Dig.* 119, *pl.* 121, requiring that all writs and process shall bear date on the day on which the same shall issue, seems to be directory. They may not be ante dated, but if post dated, it is not fatal.

3. The 7th section of the act of 4th March, 1847, directs that the proceedings had by virtue of that act shall not be appealed from or removed by *certiorari;* but where the proceedings are under color of the act, and not under and by virtue of the act, this court has power to review the proceedings by the writ of *certiorari,* and the question of jurisdiction may properly be heard and disposed of on a motion to dismiss the writ.

4. It appeared that the defendant below was employed by the plaintiffs as a lock-tender, and as part compensation for his services was permitted to occupy one of their dwelling-houses, with a garden, &c., adjoining the lock, under a standing rule of the company, known to the plaintiff, that "in case any plane or lock-tender shall be discharged while occupying the house belonging to the company, he shall thereupon immediately leave said house." That on the 12th January, 1864, the company gave him written notice of his discharge, and that he should surrender the premises to them on ·25th of same month, January, and that, refusing to surrender, proceedings were instituted to dispossess him. *Held*—

1. This was not such a tenancy as required a notice of three months to quit.

2. The affidavit of the plaintiffs, stating that they caused a written notice to be served on defendant, (of which a copy was annexed,) is sufficient, although it does not state by whom served.

3. Such notice having been served, it was not necessary that a new notice should be given after the expiration of the tenancy.

4. The affidavit of a party that the tenancy has been terminated is sufficient, the party now being a competent witness by statute.

On *certiorari.*

The *certiorari* in this case was sued out to remove into this court certain proceedings instituted before a justice of the peace, under the act of 4th March, 1847, entitled, "A supplement to an .act concerning landlords and tenants."

On the return of the writ, the defendant moved that the writ be quashed, as having been irregularly issued and because the court had no jurisdiction, the 7th section of the act having provided that the proceedings had by virtue of said act should not be appealed from or removed by *certiorari.*

The motion was argued by—

For the plaintiffs, *D. A. Depue.*

For the defendant, *J. G. Shipman.*

The opinion of the court was delivered by

HAINES, J.   The Morris Canal and Banking Company, under the act of 4th March, 1847, *Nix. Dig.* 422,* instituted proceedings before a justice of the peace against James Mitchell, to remove him from certain premises which, it is alleged, he held under them.   On the rendering of the verdict, Mitchell, by his counsel, presented to the justice a writ of *certiorari* to remove the proceedings to this court, and motion is now made to dismiss the writ and the proceedings.

The grounds of the motion are, that the writ of *certiorari* is of itself irregular and that it was improvidently issued. The irregularities complained of are—*First.* That the writ was allowed and issued before the trial, and was therefore inoperative and void.

In cases of unlawful detainer, the practice of allowing writs of *certiorari* before trial was well settled, and held to be necessary to the ends of justice.

The proceeding was summary, and until the introduction of the 14th section of the act concerning forcible entries and detainers, *Nix. Dig.* 300,† a writ of restitution could be issued forthwith on the rendition of the judgment and the tenant dispossessed before he could procure the allowance of a writ of *certiorari.*   Great injustice might have been done and irreparable injury inflicted by removing the tenant and depriving him of the enjoyment of the premises, pending the proceedings on a writ of *certiorari* afterwards obtained.   This practice was not found to produce any injurious result or to be liable to abuse, but to be most convenient and salutary.

The justice of the peace had no right to question the authority of the writ because of its test.   Being regular on its face, his duty was to obey it.   This court refused to take notice

* *Rev., p.* 576, § 29.   † *Rev., p.* 442, § 14.

of any supposed incongruity from the fact that the writ was tested before the proceedings below were instituted.

Looking at the object to be attained, the due administration of justice, it refused to consider a technicality so entirely harmless, a fiction of law so clearly beneficial.

After the introduction of that fourteenth section prohibiting the issuing of a writ of restitution until eight entire days, exclusive of Sundays, had elapsed after the rendition of the judgment, that necessity did not continue as to proceedings under that act. The party then had sufficient time to sue out his writ and present it for allowance to a justice of the Supreme Court in any part of the state.

But the operation of the act of March 4th, 1847, concerning landlords and tenants, is equally as summary as was the former act concerning forcible entries and detainers. A tenant in like manner may be unjustly removed without power of redress, unless the action be stayed by writ of *certiorari*. If it must be held to be irregular to issue and allow the writ before trial, its benefits may be entirely lost. The same reasons that existed for the practice under the former act concerning forcible entries and detainers, should be applied to the act concerning landlords and tenants.

But it is further insisted that the writ is irregular, because it was not dated on the day on which it was issued.

The first section of the act of March 17th, 1855, *Nix. Dig.* 635, *pl.* 121,* requires that all writs and processes shall bear date on the day on which the same shall issue; and that the date shall be *prima facie* evidence that it was issued on that day. This clause of the section provides a convenient and safe rule of determining when a writ was issued, but it seems to be directory. The other clause of the section is imperative and forbids the ante dating of any original process under the penalty of one hundred dollars to the party aggrieved and the damages sustained by him. The ante dating of a writ may work great damage, as in the case of an attempt to avoid the statute of limitations. But the post dating seems not to have been so considered by the legislature, and no penalty is

---

* *Rev.*, p. 855, § 43.

affixed to that. The better practice unquestionably is to follow the directions of the act and date the process truly, but a departure from that practice is not fatal to the writ.

For these reasons the motion to dismiss the writ will not be granted.

The motion is urged upon the further reason that this court has no jurisdiction of the cause, inasmuch as the 7th section of the act under which it was instituted, provides "that the proceedings had by virtue of this act shall not be appealed from or removed by *certiorari;* but the landlord shall be made liable in an action of trespass for any unlawful proceedings under it."

If the justice had no jurisdiction of the cause, but proceeded under color of the act, then this court, by virtue of its general superintending power over all inferior tribunals, has jurisdiction of the case, and the writ of *certiorari* will afford the proper remedy. *Ackerman* v. *Taylor*, 4 *Halst.* 69 ; *Stanley* v. *Horner*, 4 *Zab.* 511.

But if the justice proceed under and by virtue of the act, he has jurisdiction and this court has none, and the writ and proceedings must then be set aside. *Stanley* v. *Horner*, 4 *Zab.* 511 ; *Fowler* v. *Roe*, 1 *Dutcher* 549 ; *Schuyler* v. *Treffren*, 2 *Dutcher* 213.

The practice of hearing the question on a motion to dismiss has been found to be convenient and safe. The single point to be discussed is that of jurisdiction, and the parties can be prepared to meet it on a motion to dismiss as well as at any other stage of the cause. And it is in accordance with the spirit of the act to dispose of it summarily and without uncessary delay.

On probable cause and reasonable ground for questioning the jurisdiction of the justice, a writ of *certiorari* may be allowed, but it is without prejudice to the defendant on the question of jurisdiction, if he thinks proper to raise and argue it on the return of the writ. *Ackerman* v. *Taylor*, 3 *Halst.* 268.

The question to be considered here is, whether the justice had jurisdiction of the cause.

By the affidavits filed with the justice, it appeared that Mitchell was employed by the Morris Canal and Banking Company as a lock-tender, and as part of his compensation for his services he was permitted to occupy one of their dwelling-houses, " with a garden annexed to it and some vacant land of the company immediately adjoining the lock;" that one of the standing rules of the company, which had been in force several years and printed in duplicate and furnished to all the plane and lock-tenders, was, that " in case any plane or lock-tender shall be discharged while occupying the house belonging to the company, he shall thereupon immediately leave said house."

It further appeared that Mitchell was employed under that rule and with full notice of it; and that he had acted under and enforced the rules and regulations, of which this was one; that the company, being dissatisfied with his services, dismissed him from their employment, and on the twelfth day of January, 1864, gave him written notice of his discharge, and notice and demand in writing for the surrender and delivery of the possession of the premises to them on the twenty-fifth day of the same month of January. On his refusing to surrender the premises the company sued out the summary process from the justice's court to dispossess him.

It is alleged by the defendant below, that the matters shown did not bring the case within the jurisdiction of the justice—

1. Because the defendant held by an uncertain tenancy and was consequently a tenant at will for the purpose of a notice to quit, and that the notice of three months should have been given.

This position is taken from the supposed application to it of the principle so clearly expressed by Ewing, C. J., in *Den v. Drake*, 2 *Green's R.* 523. After a very able discussion of the subject of notice to quit, he draws the following conclusion : " From these and other English as well as American decisions, the principle may be deduced that all general and

undefined tenancies, whether they originate simply by per-
mission of the owner or where the tenant has entered under
a void lease, or been let in pending a treaty of purchase, or
whenever there has been no express agreement between the
parties as to the terms of occupancy, provided the entry be a
lawful one, or with the privity or consent of the owner, are
now held to be tenancies at will; and all tenancies at will, as
well such as are created by grant or contract as those that
arise by implication, so far at least as to entitle the party to
a half year's notice to quit, are constructively held to be
tenancies from year to year."

On the mere reading of this principle so plainly expressed,
it is manifest that the case before us does not come within
the class of cases named as requiring notice to quit, but is
one of the cases therein excepted.

Here *was* an express agreement between the parties as to
the terms of occupancy. The defendant was to occupy "as
long as he was in the employment of the company; and when
he ceased to be so employed he was immediately to leave the
house." He held under the company and so was their tenant,
not at a rent reserved, but as part compensation for his ser-
vices and only during the time those services were being per-
formed. The company reserved to themselves the right to
terminate his employment and his occupancy at their pleasure.

Such an arrangement is not only reasonable, but in most
cases of large manufacturing companies and public works,
almost indispensable. Dwellings are provided for the em-
ployees convenient to the places of their labor, to further the
objects of the enterprise and facilitate the business of them-
selves and the public. These dwellings are not leased; nor
is a rent reserved or term fixed beyond the period of labor,
for that would frustrate the design of the owners and tend
to defeat the enterprise—since while the time of a notice to
quit was running, their works might be suspended. The
notice to quit, which by the common law was six months, by
our statute three months, was not required in this case. The
tenancy was terminated on the twenty-fifth of January, and

it was the duty of the party to vacate according to his agreement.

But objection is made to the demand and notice in writing given for the delivery of the possession of the premises.

*First.* Because it does not appear to have been served on the defendant.

The affidavit of the president of the company states " that the company had felt constrained to discharge him from their employment, and that on the twelfth day of January then last they caused a notice, of which the annexed is a copy, to be served on the said Mitchell." It does not say by whom the notice was served; but he states the fact distinctly that they caused it to be served. If it was served, it is of no consequence by whom, and we are to take the affidavit as true and assume that the president knew what he so distinctly states under oath, and that the notice was actually served.

*Second.* A further objection is, that no notice was served after the expiration of the time of employment and after the expiration of the tenancy.

The act provides, as one of the requisites to the jurisdiction of the justice, that the tenant shall hold over and continue in possession of the premises after the expiration of the term and after demand made and notice in writing given for the delivery of the possession.

In this case the notice of discharge from employment contained also a demand and notice in writing to deliver up the possession. If after that he continued in possession he became liable to the action. No further notice could be of use to him and none was necessary.

The language respecting notice in the act under consideration is almost identical with that used on the subject, in the act concerning forcible entries and detainers, under which this court held in *Townly* v. *Rutan, Spencer* 606, that the act did not require that the notice should be given after the expiration of the tenancy. A second notice would cause unnecessary trouble and delay, and be of no benefit whatever

to the tenant who was informed by the first notice that he was required to surrender the premises.

Another objection to the jurisdiction of the justice is, that before the issuing of the summons the justice should have been satisfied that the tenancy had been terminated by due proof, which term, " due proof," in *Stanly* v. *Horner*, 4 *Zab.* 511, was held to mean more than the affidavit of the party.

This objection is not tenable, because an affidavit made by a party is competent for such proof, inasmuch as he may now by statute be a witness and make due proof as well as a stranger.   And because, secondly, the affidavits were not made by the party in the suit but by their agents, one of whom was the president, the other the general officer of the company.

Their testimony was competent and meets the term due proof; and, as before shown, it was such as did and ought to have satisfied the justice that the tenancy had been terminated.

The objections of the defendant below were not well taken. It is manifest that the justice had jurisdiction of the cause, and consequently, that this court has not.   The writ of *certiorari* must be dismissed, with the costs of this motion to be paid by the defendant below, and the record remitted to the justice and the case proceeded in according to law.

OGDEN and VREDENBURGH, Justices, concurred.

CITED in *Dock* v. *Elizabethtown Steam Manufacturing Co.*, 5 *Vroom* 315.