McWATTERS et al. v. UNION OIL CO. OF CALIFORNIA et al.

No. 28373.

United States District Court
N. D. California, S. D.

Nov. 9, 1948.

Bertram Edises and Edises, Treuhaft & Condon, all of Oakland, Cal., for plaintiffs.

Marion B. Plant and Brobeck, Phleger & Harrison, all of San Francisco, Cal., for defendants.

ROCHE, Chief Judge.

Plaintiffs, who are striking employees of defendant Union Oil Company of California, seek to enjoin the defendant from evicting them from a dormitory that is owned by the defendant Company and located on the Company's property at Oleum, near Richmond, California. A temporary restraining order was issued by this court on October 13, 1948, and the matter is now before the court on plaintiff's application for a preliminary injunction.

The record discloses that on October 1, 1948, the defendant posted a notice requiring the plaintiffs, as occupants of the dormitory, to vacate the premises on or before October 4, 1948. Plaintiffs thereupon applied to the Superior Court of the State of California, in and for the County of Contra Costa, for a preliminary injunction. An order to show cause issued and after a full hearing the court denied the application for injunction and dissolved the temporary restraining order theretofore issued. Plaintiffs did not appeal from this order but dismissed the action and filed a new petition in this court, basing the instant application on a new notice to vacate, dated October 12, 1948, and requiring plaintiffs to move on or before October 13th.

The factual situation, as disclosed by oral and documentary evidence, is as follows: Defendant owns and operates a large processing plant near Richmond, California, and among other structures on the property is a dormitory building in which live a number of defendant's employees. The dormitory is operated, and has been since 1941, by a committee, known as the Dormitory Association, composed of employees living in the dormitory. This Association is operated as a non-profit organization. It collects, on a monthly basis, a sufficient sum of money from each employee living in the dormitory to cover the cost of janitorial service, laundry, miscellaneous cleaning supplies, public liability and employer liability insurance, social security tax, unemployment insurance, secretary-treasurer fidelity bond, and equipment replacement, plus a reserve fund. The purpose of the reserve is to act as a stabilizing fund so that the monthly assessment will not fluctuate widely. The defendant supplies to the Dormitory Association, without charge, all utilities including gas, water and electric power, and makes all normal building repairs. The monthly assessment has ranged between $7 and $10, no part of which has ever been paid to defendant. There is no rental agreement between defendant and its employees living in the dormitory. The dormitory quarters are furnished to defendant's employees as an incident to their employment and this arrangement results, of course, in a benefit

to both sides in enabling the employees to be nearer their work than would otherwise be possible.

The question for decision is whether this provision of living-quarters has resulted in a landlord and tenant relationship between the defendant employer and plaintiff employees.

Plaintiffs take the position that such a relationship has been created and that, therefore, they are within the protection of the Federal Housing and Rent Act of 1947, as amended, and entitled to the sixty-day notice prescribed in Section 209(c) of the Act, 50 U.S.C.A.Appendix, §§ 1881 et seq., 1899(c).

Defendant's position is that plaintiffs occupy the dormitory solely because of their status as employees, that so long as they remain employees they have a license to occupy such premises but when their employee relationship terminates, as it has through plaintiffs leaving their employment and going on strike, their license ceases and defendant can evict them without giving them either the sixty-day notice required under the Housing Act or the thirty-day notice required by California law, Civ.Code, § 1946, in the case of a month-to-month tenancy, or any notice whatsoever.

Plaintiffs urge that the Alabama case of Dickey v. West Boylston Mfg. Co., Ala. Sup., 36 So.2d 106 (decided in 1940; rehearing denied in 1948), and the Fifth Circuit Court's decision in Dixie Pine Products Co., Inc., v. Bowles, 159 F.2d 507, are decisive in their favor. However, a close examination of those cases reveals factual situations essentially different from the one here involved. In the Dickey case, which was an action by the Company to recover premises wrongfully withheld, the employer and employee had entered into a written lease argeement reciting a stated weekly rental lower than the reasonable value because of lessee's employment by lessor, provision for liquidated damages upon failure to give possession as provided in the lease, and provision that employee would vacate upon five days notice. The employee was dismissed for lack of available work but refused to give possession of the premises and tendered the weekly rent, which the Company refused. The Circuit Court's judgment for the plaintiff Company was reversed on appeal, the Alabama Supreme Court holding, on the authority of Dixie Pine Products Co. v. Bowles, supra, that the employee was entitled to the protection of the Housing Act.

The Dixie Pine Products case was an action to require the defendant Company to register all rental units or housing accommodations. It appears that the Company had constructed sixty-two dwelling houses on its premises to accommodate employees and that the rents charged were substantially less than the charges made for like housing and were intended to take care of taxes, insurance, and upkeep. The Company defended on the ground that Section 1(b) of Rent Regulations, which exempts from control any dwelling space occupied by employees employed for the purpose of rendering services in connection with the premises of which the dwelling space is a part, was applicable. The court held that defendant's employees were not "service employees" within the meaning of said section and that the dwelling houses were thus required to be registered.

On its facts the present case resembles more closely the Michigan case of Lane v. Au Sable Electric Co., 181 Mich. 26, 147 N.W. 546, 548, Ann.Cas.1916C, 1108, wherein the plaintiff, defendant's employee, sued for damages to his furniture which had been set out on the street by the defendant because of the plaintiff's refusal to obey a notice to quit. The notice to quit was given to him while he was on strike with other employees. In holding for the defendant the court said: "The relation of landlord and tenant between the parties did not exist. It was the relation of employer and employed; the plaintiff being in possession of property belonging to the employer by virtue of his employment. When the plaintiff voluntarily severed the relationship which entitled him to the use of the property, that moment he ended his right to its use." See, also, Mitchell v. Morris Canal & Banking Co., 31 N.J.L. 99.

So in the case at bar. Plaintiffs' occupancy of defendant's dormitory resulted

from their status as employees and was permissive only. They were licensees whose license depended upon a continuation of the employer-employee relationship. When the relationship upon which such license was based ended, the license ended and plaintiffs have no further right to occupy defendant's property.

In accordance with the foregoing it is, therefore, ordered that plaintiffs' application for an interlocutory and final injunction be and the same hereby is denied and that the temporary restraining order heretofore issued out of this court be and the same hereby is dissolved.